UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KABIL A. DJENASEVIC, *pro se*, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) <br> ) |
| v. | ) Case No: 16-cv-2085-RCL <br> ) |
| EXECUTIVE OFFICE OF UNITED STATES ATTORNEYS, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

## MEMORANDUM OPINION

This case—arising under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a—concerns access and amendment requests by *pro se* plaintiff Kabil Anton Djenasevic for records maintained by the Executive Office of United States Attorneys ("EOUSA"), Drug Enforcement Administration ("DEA"), and Federal Bureau of Prisons ("BOP"). Defendants EOUSA and BOP move for dismissal of the plaintiff's Privacy Act claims and defendants EOUSA and DEA move for summary judgment on the FOIA claims.[1] Upon consideration of the pleadings, the entire record, and the applicable law, the Court **GRANTS** the defendants' motion to dismiss the Privacy Act claims and **GRANTS** the defendants' motion for summary judgment on the FOIA claims. ECF No. 46. Conversely, the Court **DENIES** the plaintiff's cross-motion for summary judgment. ECF No. 50.

---

[1] Defendant DEA did not receive any Privacy Act amendment requests related to the plaintiff's amended complaint and therefore did not move to dismiss Privacy Act claims. Moreover, the plaintiff's FOIA claims against the EOUSA and DEA are encompassed in the First Cause of Action in his amended complaint. ECF No. 30 at 7-9. The plaintiff did not appear to request documents under FOIA from BOP, nor file a FOIA claim against BOP. *Id.* Accordingly, BOP did not move for summary judgment under FOIA.

I.  **BACKGROUND**

In 2007, the United States Court of Appeals for the Eleventh Circuit affirmed the conviction and sentencing of Mr. Djenasevic for conspiracy to possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), distribution of heroin, in violation of 21 U.S.C. § § 841(a)(1) and 841(b)(1)(C), possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(i), and illegal possession of firearms, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *U.S. v. Djenasevic*, 248 Fed.Appx. 135, 136 (11th Cir. 2007). Mr. Djenasevic subsequently filed a 28 U.S.C. § 2255 motion in 2009, which the district court denied. The Eleventh Circuit reversed, finding that his counsel was ineffective in not moving to withdraw his guilty plea based on impermissible judicial interference in plea negotiations. *Djenasevic v. United States*, 425 Fed.Appx. 834 (11th Cir. 2011). On remand, the district court vacated Mr. Djenasevic's guilty plea. Following a jury trial, he was found guilty and his appeal was denied in 2013.

Since as early as 2011, Mr. Djenasevic has directed numerous Privacy Act amendment and FOIA requests to EOUSA, DEA, and BOP. ECF No. 46 at 3-9. The Court incorporates by reference the Defendant's Statement of Material Facts insofar as they outline the procedural history regarding the handling of the plaintiff's various Privacy Act and FOIA requests. *Id.*[2] In addition to denying the plaintiff's request to amend his pre-sentence report, the defendants released a set of documents and withheld others pursuant to various FOIA and Privacy Act exemptions.

---

[2]  Plaintiff, in his opposition, failed to counter-file a statement of facts in dispute. In his sur-reply, he notes that he "only has one set of facts, and that is the truth stated in his verified amended complaint and Judicial Notice [*sic*] showing the falsity in violation of the Privacy Act." ECF No. 64 at 1. Despite this claim, the Court in its review of the plaintiff's filings has not found any dispute as to the procedural history of the FOIA and Privacy Act requests. As such, the Court will consider them defendant's statement of the procedural history to be true for purposes of this Opinion.

In his Amended Complaint, the plaintiff, among other things, contends that "despite [his] numerous demands to the defendant's [*sic*] to release all records and to make corrections to the same records, that plaintiff also requires access to, [n]o valid documents were sent, and/or corrections made by the defendant's [*sic*]." ECF No. 30 at 8. The plaintiff seeks relief pursuant to the Privacy Act and FOIA. The defendants moved to dismiss all Privacy Act claims and moved for summary judgment on the FOIA claims. The plaintiff responded and cross-moved for summary judgment. The Court now considers those motions.

## II. MOTION TO DISMISS PRIVACY ACT CLAIMS

### A. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), "the court must assume 'all the allegations in the complaint are true (even if doubtful in fact),' and the court must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged.'" *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal citations omitted).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the factual allegations in the complaint need not be "detailed," the Federal Rules require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). The facts alleged in

the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**B. Discussion**

Defendants EOUSA and BOP allege various independent reasons as to why the Privacy Act claims must be dismissed. The Court finds that for at least two independent reasons, the Privacy Act claims must be dismissed.

*1. Statute of Limitations*

First, defendants assert that the claims are barred by the statute of limitations. Actions to enforce rights under the Privacy Act must be brought "within two years from the date on which the cause of action arises ...." 5 U.S.C. § 552a(g)(5); *see also Blazy v. Tenet*, 979 F.Supp. 10, 22 n. 6 (D.D.C. 1997) (citing *Tijerina v. Walters*, 821 F.2d 789, 798 (D.C. Cir. 1987). For the purposes of determining when the cause arose, "the statute of limitation does not begin to run until the 'plaintiff knows or should know of the alleged violation.'" *Kursar v. TSA*, 751 F.Supp.2d 154, 165 (D.D.C.2010) (quoting *Tijerina*, 821 F.2d at 798).

Here, the plaintiff's Privacy Act amendment claims all relate to information from his criminal case which he believed was incorrect. And plaintiff knew about the alleged violation as early as 2010 when he addressed letters to EOUSA seeking amendments to his records. ECF No. 46-2 at 12. Similarly, he sent a form to BOP on February 9, 2011 requesting amendments to "inaccurate/incorrect" records. ECF 46-4 at 40. The plaintiff did not file the present lawsuit until September 28, 2016, ECF No. 1 at 14, well beyond the two-year statute of limitations period. The plaintiff appears to be arguing that he thought his records were amended by the Eleventh Circuit's reversing the district court's denial of his 2255 motion in 2011. However, the record reflects that on July 21, 2011, EOUSA sent the plaintiff a letter informing him that his request to amend his

4

records was denied. ECF No. 46 at 4. Moreover, the plaintiff filed an administrative remedy request on July 16, 2013, to BOP, again asserting that his pre-sentence report was incorrect. *Id.* The plaintiff cannot credibly argue that he thought his records were amended in 2011. Therefore, Court must dismiss the Privacy Act amendment claims on statute of limitations grounds alone.

### 2. *Records Exempt from Amendment and Disclosure under the Privacy Act*

Defendants are also correct that the plaintiff has failed to state a claim because the records he sought to amend are exempt from amendment under the Privacy Act. The Privacy Act "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records ... by allowing an individual to participate in ensuring that his records are accurate and properly used, and by imposing responsibilities on federal agencies to maintain their records accurately." *Bartel v. FAA,* 725 F.2d 1403, 1407 (D.C. Cir. 1984). "[L]ike FOIA, the Privacy Act carves out exemptions from disclosure when a system of records meets certain criteria." *Mobley v. C.I.A.,* 806 F.3d 568, 586 (D.C. Cir. 2015). Privacy Act Exemption (j)(2) permits an agency head to promulgate rules exempting certain records from amendment and disclosure requirements. *See* 5 U.S.C. § 552a(j). Pursuant to that authority, BOP has exempted inmate central records, 28 C.F.R. § 16.97(j), as well as "[p]resentence records that originated with the courts," 28 C.F.R. § 16.46(f)(3). Similarly, the Department of Justice exempts criminal case files maintained by the U.S. Attorney's Offices from access and amendment. *See* 28 C.F.R. §16.81(a).

Here, the plaintiff's amendment requests fall squarely within those exemptions. He requested amendment of his pre-sentence report[3] and his underlying criminal case files. *See e.g.,*

---

[3] It is unclear exactly what the plaintiff is referring to in requesting amendment to his pre-sentence report. To the extent he seeks amendment to his Presentence Investigation Report ("PSI"), the Court notes that BOP would not have any authority to amend the report. The PSI is a

ECF No. 46-2 at 12; ECF No.46-4 at 32. Because BOP and EOUSA have exempted those categories of records from access and amendment, the plaintiff's Privacy Act claims must be dismissed. *See, e.g. Martinez v. Bureau of Prisons,* 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (upholding dismissal of Privacy Act claims against BOP which had "exempted its Inmate Central Record System from the accuracy provisions of the Privacy Act, 5 U.S.C. § 552a(e)(5)").[4]

The records at issue in this case are also exempt from disclosure under the Privacy Act. Under Exemption (j)(2) of the Privacy Act, records may be exempted from disclosure when they are "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals...." 5 U.S.C. § 552a(j)(2). By regulation, the Department of Justice has exempted criminal case files maintained by the U.S. Attorney's Offices from access. *See* 28 C.F.R. §16.81(a). Similarly, DEA has exempted pursuant to Exemption (j)(2) investigative case files maintained in its Investigative Reporting and Filing System from access. *See* 28 C.F.R. § 16.98(i). As already discussed, the plaintiff's request for access under the Privacy Act pertain to the criminal investigations in his case. The Court agrees, therefore, that the documents were compiled for law enforcement purposes and are exempt from disclosure under the Privacy Act.

---

document of the sentencing court prepared by the probation office. BOP is unable to provide the remedy he seeks. However, to the extent the plaintiff seeks amendment to other BOP files, the Court's analysis above applies.

[4] Plaintiff's reference to *Doe v. United States*, 821 F.2d 694 (D.C. Cir. 1987) for the proposition that an "agency must take reasonable steps to maintain the accuracy of the information to assure fairness to the individual" is unavailing in this context. ECF No. 50 at 4. The case says nothing about an agency's requirement to amend records that it has exempted from amendment by regulation.

The plaintiff also argues that the records in question are subject to amendment and access pursuant to the public domain exemption. ECF No. 50 at 2; ECF No. 64 at 5. The plaintiff appears to assert that because the government identified certain confidential informants in court filings, the government is obligated to release and amend the records relating to the "false testimony" at his trial. ECF No. 64 at 5. However, the public domain exception only applies to information "in the public domain by official disclosure." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007). And the requester bears the "burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.* (internal citations and quotation marks omitted). The plaintiff has failed to meet his burden here. He has not pointed to any information in the public domain via official disclosure that duplicates information he alleges is being withheld.

The plaintiff also argues that regardless of whether the records in question are exempted, he may still pursue his claims because the defendants intentionally and willfully violated the Privacy Act. ECF No. 50 at 4. Among other claims, the plaintiff alleges that "[i]t is clear that the reports were falsely written by the DEA [agents] ... after [he] did not show at the sting entrapment location Amoco filling station on January 3, 2001." *Id.* at 5. He continues, "[t]hese records were known to the defendant's agents to be false." *Id.* However, the plaintiff does not provide evidence sufficient to support a violation of the statute. The D.C. Circuit has held that "a violation of the statute must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful." *Maydak v. United States*, 630 F.3d 166, 179 (D.C. Cir. 2010). Despite the plaintiff's conclusory allegation, the Court is unable to ascertain from the plaintiff's filings any facts supporting an intentional and willful violation of the Privacy Act.

For the reasons stated herein, the Court finds that the plaintiff has failed to state a claim for relief under the Privacy Act and such claims are hereby dismissed.

## III. MOTION FOR SUMMARY JUDGMENT ON FOIA CLAIMS

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(a). As applied in a FOIA case, an agency defendant may be entitled to summary judgment if it demonstrates that 1) no material facts are in dispute, 2) it has conducted an adequate search for responsive records, and 3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (*citing Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980)).

When an agency receives a FOIA request it is obligated to "conduct a search reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 541 (D.C. Cir. 1990) (internal quotation marks omitted). The adequacy of a search, therefore, depends not on "whether any further documents might conceivably exist," *id.*, but on the search's design and scope. An agency must accordingly show that it made "a good faith effort to conduct a search for the requested records, using methods [that] can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The agency bears the burden of showing that it complied with FOIA and it may meet this burden "by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003). The plaintiff may then "provide 'countervailing evidence' as to the adequacy of the agency's search." *Id.* at 314. If a review of the record created by these affidavits "raises substantial doubt," as to a search's adequacy, "particularly in view of 'well defined requests and positive indications of

overlooked materials'" summary judgment would not be appropriate. *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. Nat'l. Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

An agency claiming an exemption to FOIA bears the burden of establishing that the exemption applies. *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979). An agency satisfies that burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks omitted).

"Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.D.C. 1991). They may, however, be rebutted by evidence of bad faith. *Id.*

**B.     Discussion**

Defendants EOUSA and DEA move for summary judgment on the plaintiff's FOIA claims, arguing that there is no genuine of material fact and that they are entitled to judgment as a matter of law. They contend that they have adequately fulfilled their disclosure obligations under FOIA. In support of their motion, EOUSA relies on the declaration of David Luczynski, an Attorney Advisor with EOUSA, and the DEA relies on the declaration of Katherine L. Myrick, Chief of the Information Privacy Unit of DEA. For the following reasons, the Court will grant the defendants motion for summary judgment.

    *1.     Reasonableness of the Search*

9

The Luczynski and Myrick Declarations indicate that the EOUSA and DEA both conducted searches "reasonably calculated to uncover all relevant documents." *Truitt*, 897 F.2d at 541. The Luczynski Declaration provides that upon receiving the plaintiff's various FOIA requests for access to all records related to his criminal case following remand to the district court in 2011, EOUSA forwarded the requests to the FOIA contact for the United States Attorney's Office for the Middle District of Florida, the district from which the plaintiff requested his criminal records. ECF No. 46-2, ¶ 8. The FOIA contact began a systematic search using "LIONS," the computer system used by U.S. Attorney's offices to track cases and retrieve files. *Id*. The contact searched for all records on "Kabil Anton Djenasevic" and searched for records from the case files in case number 8:02-cr-424-T-27 MAP JDW, the case that the plaintiff identified in his request. *Id*. The Declaration concludes that there "are no other records systems or locations within EOUSA in which other files pertaining to Plaintiff were maintained." *Id*.

The Myrick Declaration outlines the steps the DEA took to locate records responsive to the plaintiff's requests. The DEA construed the plaintiff's requests as seeking investigative records maintained by the DEA pertaining to the plaintiff. ECF No. 46-3, ¶ 12. The DEA searched for those records in the Investigative Reporting and Filing System ("IRFS")—a DEA Privacy Act System of Records that contain all administrative, general, and investigative files compiled by DEA for law enforcement purposes. *Id*. The declaration further noted that no other record system maintained by the DEA "is reasonably likely to contain the records responsive to the request." *Id*. The DEA searched IRFS using the plaintiff's identifying information and conducted queries using the DEA Narcotics and Dangerous Drugs Information System ("NADDIS")—which is the method the DEA uses to retrieve information from the IRFS. *Id*. The DEA obtained the responsive files using that search and provided the plaintiff with the non-exempt records.

The Court finds that EOUSA and DEA met their burden to demonstrate that they conducted reasonable searches. The agencies searched the record systems likely to contain responsive records. The plaintiff has not provided any "countervailing evidence as to the adequacy of the agency's search." *Iturralde*, 315 F.3d at 314. The plaintiff appears to contest the adequacy of the search by noting that the defendants are "withholding the 'recordings,' 'pre and post' claimed recorded 'marked money,' and claimed drug evidence." ECF No. 64 at 1. He attaches a document which he contends offers proof of the government's foul play. ECF No. 64 at 8-10. But the document—which appears to be notes from a detective in the Pinellas County Sherriff's Office—offers no such proof and the Court is unable to ascertain any facts supporting the plaintiff's allegations. And even if there are records that pertain to his FOIA requests which have not been produced, that in itself does not render the search unreasonable under FOIA. "[I]t is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate." *Iturralde*, 315 F.3d at 314 (internal citations omitted). Instead, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Id.* (internal citations omitted). The plaintiff provides the Court with no evidence calling into question the methods used to carry out the searches.

2. *Application of FOIA Exemptions*

EOUSA and DEA withheld certain records from the plaintiff pursuant to FOIA Exemptions 3, 5, 6, 7(C), 7(D), 7(E), and 7(F). In order for withholdings to be proper under a FOIA exemption, an agency must demonstrate that invoking an exemption is "logical" or "plausible." *Wolf v. C.I.A.*, 473 F.3d 370, 374-375 (D.C. Cir. 2007) (citations omitted). EOUSA and DEA rely upon their declarations and *Vaughn* indices to demonstrate that applying the various exemptions was proper. The Court will consider the application of each exemption in turn.

a) Withholding by EOUSA under FOIA Exemption 3

Pursuant to this exemption, EOUSA withheld two drafts of a superseding indictment, which are identified as grand jury material. ECF No. 46-2 at 23. FOIA Exemption 3 exempts from disclosure records when they are:

> specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3). Federal Rule of Criminal Procedure 6(e) is a statue which prohibits disclosure of matters before the grand jury. *See Fund for Const. Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867–68 (1981). "Any disclosure [of grand jury information] to persons outside of the government may only be made pursuant to a court order." *Fund for Constitutional Government v. National Archives and Records Service*, 656 F.2d 856, 868 (D.C. Cir. 1981). Since there is no evidence that the plaintiff has obtained a court order entitling him to the records, the Court finds that EOUSA's invocation of Exemption 3 is appropriate.

b) Withholding by EOUSA under FOIA Exemption 5

Pursuant to Exemption 5, EOUSA withheld drafts of a plea agreement and the drafts of the superseding indictment already discussed above. ECF No. 46-2 at 23-24. FOIA Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has explained that the exemption authorizes withholding of documents that would normally be privileged in the context of civil discovery. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). Therefore, "to justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil

discovery for reasons similar to those asserted by the agency in the FOIA context." *Burka v. U.S. Dept. of Health and Human Services*, 87 F.3d 508, 517 (D.C. Cir. 1996). "[C]ourts have incorporated three traditional civil discovery privileges into Exemption 5: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege." *Cuban v. S.E.C.*, 744 F. Supp. 2d 60, 75 (D.D.C. 2010) (citations omitted).

The plaintiff does not appear to contest any withholding under this exemption. Even so, the Court finds that EOUSA properly withheld the draft plea agreement and superseding indictment under both the deliberative process privilege and the attorney work-product privilege. The documents were "predecisional" in that no final agency action had been taken and were deliberative in that they were shared as part of a consultative process. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). As such, the deliberative process privilege applies. Moreover, the attorney work-product privilege applies because the documents were prepared by, or at the request of an attorney, and made in anticipation of litigation.

c) Withholding under FOIA Exemptions 6 and 7(C)

FOIA Exemption 6 protects against the disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under FOIA Exemption 7(C), an agency can withhold "records or information compiled for law enforcement purposes ... that could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Exemption 7(C), which requires the government to prove only that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy, is somewhat broader than Exemption 6, which requires proof of a clearly unwarranted invasion of personal privacy." *Roth v. United States DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (internal citations

omitted). Accordingly, "[i]f the information withheld here was 'compiled for law enforcement purposes,' thus implicating Exemption 7(C), then we would have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.*

To assess whether disclosure would constitute a "clearly unwarranted invasion of personal privacy" under Exemption 7(c), the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992). Courts take very seriously the privacy interests of third-parties. *See e.g., Neely v. FBI*, 208 F.3d 461, 464-65 (4th Cir. 2000) ("FBI agents, government employees, third-party suspects, and other third-party suspects, and other third parties mentioned or interviewed in the course of the investigation have well-recognized and substantial privacy interests in the withheld information. Among other things, those individuals have a substantial interest in the nondisclosure of their identities and their connection with particular investigations because of the potential for future harassment, annoyance, or embarrassment.")

If privacy interests are identified, the burden shifts to the FOIA requestor to "establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." *National Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). If the FOIA requestor argues that the public interest in disclosure is to show that "responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the

requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174.

In this matter, EOUSA withheld, under Exemptions 6 and 7(C), the identifying information of law enforcement officials, witnesses, and medical personnel who were mentioned in Plaintiff's case file. And DEA withheld the identifying information of third parties, such as law enforcement personnel, witnesses, suspects, codefendants, and confidential sources under Exemption 7(C). *See* ECF No. 46 at 33. The Court agrees with the agencies that withholding information pertaining to third-parties implicates an important privacy interest. And there is no conceivable public interest, let alone a significant one, that warrants overriding the third-parties' privacy interest in having their identities protected. The Court is unable to identify from the plaintiff's pleadings any evidence that rises above "bare suspicion" that "Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Therefore, both EOUSA and DEA properly applied Exemption 7(C) and EOUSA properly applied Exemption 6.

d) Withholding by DEA under FOIA Exemption 7(D)

Pursuant to Exemption 7(D) the DEA withheld information that was provided by a confidential source. ECF No. 46-3 at 10-11. Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source ... [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation. *See U.S. Dep't of Justice v. Landano,* 508 U.S. 165, 181

15

(1993). Rather, a source's confidentiality is determined on a case-by-case basis. *Id.* at 179–80. "A source is confidential within the meaning of 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995).

Confidentiality can be established expressly or impliedly. Regardless of which type of confidentiality is asserted, the focus should always be on whether the *source* of the information spoke with the understanding of confidentiality, not whether the *document* is generally thought to be confidential. *Landano*, 508 U.S. at 172. "The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists." *Amuso v. DOJ*, 600 F.Supp.2d 78, 100 (D.D.C. 2009). The "violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators." *Lasko v. DOJ*, 684 F.Supp.2d 120, 134 (D.D.C. 2010).

In its declaration, the DEA notes that the confidential source was "involved and maintained a close relationship with several individuals who trafficked in cocaine and engaged in other violent and illegal activities." ECF No. 46-3 at 10. The Court is convinced that under these circumstances confidentiality was implied and that any information that could identify the informant could subject them to serious harm. The DEA properly applied Exemption 7(D).

e) Withholding by DEA under FOIA Exemption 7(E)

An agency can withhold records, pursuant to Exemption 7(E), that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7)(E). To satisfy its burden under this exemption, the agency must only "demonstrate[ ] *logically* how the release of [the

16

requested] information might create a risk of circumvention of the law." *PHE, Inc. v. DOJ*, 983 F.2d 248, 251 (D.C. Cir. 1993).

Here, the DEA invoked Exemption 7(E) to withhold information related to the plaintiff's investigations, including "filing numbers and specific times and locations of meetings with confidential sources." ECF No. 46-3 at 11. The DEA also withheld "sensitive non-public portions of its Agents' Manual regarding the modus operandi for numerous of its law enforcement objectives, including segments of the sections on operational travel, undercover operations, and the use of confidential informants." *Id.* In its declaration, the DEA compellingly argues that releasing that information would allow criminals to restructure their activities to circumvent the law.

The DEA also withheld sensitive case numbers pursuant to this exemption. The Court also finds that decision proper for the reason described in the DEA's declaration: "[a]pplying a mosaic analysis, suspects could use these numbers in conjunction with other information known about other individuals and techniques to change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities." *Id.*

    f)  Withholding by DEA under FOIA Exemption 7(F)

Exemption 7(F) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to endanger the life or physical safety of any individual" 5 U.S.C. § 552(b)(7)(F). The DEA invoked this exemption in conjunction with Exemption 7(C) to protect the names of DEA Special Agents and individuals involved in criminal investigations. The DEA asserts that releasing the names of its Special Agents would endanger their lives and physical safety. As with previous exemptions, the plaintiff does not appear to offer any argument as to this

why the names should not be exemption. Accordingly, the Court finds that the DEA properly applied Exemption 7(F).

### 3. Segregability

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C.A. § 552(b). Courts have a duty to consider the issue of segregability, even if not raised by the parties. *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

With respect to all documents responsive to the plaintiff's requests the agencies aver that they conducted a page-by-page segregability analysis and determined that no reasonably segregable, non-exempt information was withheld from the plaintiff. *See* ECF No. 46-2 at 10; ECF NO. 46-3 at 13. The agency is entitled to a presumption that it properly segregated the information. *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). After reviewing the declarations and the *Vaughn* indices and seeing no evidence of bad faith, the Court finds that EOUSA and DEA properly released any reasonably segregable information.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the defendants' motion to dismiss the Privacy Act claims and **GRANTS** the defendants' motion for summary judgment on the FOIA claims. ECF No. 46. Conversely, the Court **DENIES** the plaintiff's cross-motion for summary judgment. ECF No. 50. The case is hereby dismissed. A separate Order accompanies this Memorandum Opinion.

Date: August 14, 2018

_____
Royce C. Lamberth
United States District Judge

18